10 N.J. Super. 470 (1950)
77 A.2d 475
GEORGE WOOLF, PLAINTIFF-APPELLANT,
v.
HELEN W. WOOLF AND CARROLL WOOLF, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1950.
Decided December 15, 1950.
*471 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Perry E. Belfatto argued the cause for appellant.
Mr. Charles F. Dittmar argued the cause for respondents.
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
Carroll L. Woolf died on July 27, 1944, seized of a one-family residential property in Matawan, New Jersey. He left surviving two sons, George and Carroll, and his second wife, Helen Woolf. In the pretrial order it was stipulated that "the heirs George and Carroll Woolf have been in possession of the property since his death; that the heirs did not offer to assign dower and the widow did not ask that dower be assigned to her until June, 1947." In the judgment entered in the Chancery Division of the Superior Court, Helen Woolf was allowed $3,360 as the rental *472 value of the premises from the date of her husband's death until the time of the "admeasurement" of her dower, in satisfaction of her right of quarantine, and, in addition, a gross sum in lieu of dower from the date of "admeasurement" of dower.
The sole question presented is whether the court erred in finding that the widow was entitled to the right of quarantine in the Matawan property.
At common law the widow had the right of quarantine which was expressly guaranteed in Magna Charta. Lord Coke said: "By the statute of Magna Charta, cap. 7, it is provided that she shall tarry in the chief house of her husband but forty days after his death, within which time dower shall be assigned unto her; but of little effect was that act, for no penalty is thereby provided if it be not done: which term of forty days is in law called Quarantine." Coventry's Co. Litt. 32 (1830). In our State, this right of the widow was greatly extended by section 2 of "An Act relative to dower," passed January 31, 1799 (Pat., p. 343). However, our courts continue to refer to the extended right as the widow's "quarantine." Cf. Bahr v. Cooper, 141 N.J. Eq. 584, 587 (Ch. 1948).
The language of section 2 of the 1799 act, with only slight editorial change, has been carried down into our present statute, R.S. 3:37-4, which in pertinent part provides:
"Until dower * * * is assigned, the widow * * * may remain in, hold and enjoy the mansion house of * * * her spouse and the messuage or plantation belonging thereto, without being liable to pay rent therefor. * * *"
In McLaughlin v. McLaughlin, 22 N.J. Eq. 505, 509 (E. & A. 1871), Chief Justice Beasley said: "The purpose of the act is obviously to provide a home for the widow until her dower be assigned, as well as to put a compulsion on the heir to make the assignment." Similar statutes, extending the widow's common law right of quarantine, have been given the same construction in other states. 2 Tiffany, Law of Real Property, § 535 (3rd ed. 1939); 126 A.L.R. 796, 812.
*473 The appellant argues that the widow had no right of quarantine in the property, because it was not "the mansion house of her spouse" and because she neither had possession nor asserted dominion over it.
The Matawan property was purchased by Carroll L. Woolf in 1925 and he lived there with his first wife until her death in April, 1943. There was testimony that he continued to live there until the day before his marriage to Helen on October 17, 1943. Thereafter, this fully furnished house remained unoccupied until his death in July, 1944, except on the occasions when he stayed overnight therein on his periodic trips to Matawan. He made no attempt to rent or dispose of the property. After his marriage to Helen, he voted in Matawan at the general election in November, 1943. He received all his mail in Matawan and his income tax return "emanated from there."
Helen lived in an apartment in Long Island City, New York, leased by her since 1934. Upon her marriage to Carroll on October 17, 1943, Carroll moved into her apartment and continued to live there until his death. There was testimony that Carroll and she had planned to move into the Matawan house, but they stayed in her New York apartment after the marriage; first, because the bad winter made commuting from Matawan to Linden, his place of employment, more difficult for him than commuting from her apartment, and, later, because he became quite ill in February, 1944, and found it more convenient, while the need continued, for visiting his doctor who was in New York.
There was testimony that he hoped to keep the house until his boys, who were in the service, came home, and then sell it and give half the selling price to the boys. There was also testimony that shortly before his death he was approached by his employer to accept work in Detroit, but did nothing about it because of his ill health. With knowledge that the widow survived, the plaintiff George Woolf took possession immediately after his father's death. At no time did Helen ever occupy the premises.
*474 That the Matawan property was his "mansion house" from 1925 until the death of his first wife in April, 1943, is beyond question. We agree with the court below that it was still his "mansion house" at the time of his death. He maintained it fully furnished and made no attempt to rent or dispose of it. It did not cease to be his "mansion house" because he chose, for his own convenience, to reside in Helen's apartment in New York for the nine months before his death. It continued to be his "mansion house" despite the expression of an intention to sell it at some future time and the consideration he gave to moving to Detroit.
If the widow had remained in the mansion house after her husband's death, she would have had her right of quarantine. But personal occupation by the widow of the mansion house is not an essential; she may rent the premises and receive the rents without losing her right of quarantine. Craige v. Morris, 25 N.J. Eq. 467 (Ch. 1875); Davis v. Lowden, 56 N.J. Eq. 126 (Ch. 1897); Bahr v. Cooper, above. In this case the widow neither remained in possession nor exercised dominion by renting the premises and receiving the rents. However, a widow may be entitled to her right of quarantine even though she neither remains in possession nor exercises dominion over the mansion house. At common law the widow had her writ de quarantina habenda against the heir or other tenant of the land who put her out. Davis v. Lowden, above; cf. 126 A.L.R. 796, 799. These heirs took possession of the property, but failed to assign dower to the widow. Were we to hold that this widow was not entitled to a right of quarantine, we would defeat the purpose of our statute. The continuation of the widow's right of quarantine is the penalty the statute imposes on the heirs who do not assign her dower. It was within their power to stop the running of the widow's right by assigning the dower, and they must now pay the penalty which the law imposes for their failure to do so.
The judgment is affirmed.